# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis Orange, #311216, | ) CIVIL ACTION NO. 9:14-3614-RBH-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Dennis Patterson, Div. Of Operation SCDC; | ) |
| Levern Cohen, Warden Ridgeland CI; | ) |
| Mary Montoth, IGC; Investigator Hembrick; | ) |
| and Terrell Housey, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment[1] pursuant to Rule 56, Fed.R.Civ.P. on August 3, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 4, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to

---

[1]Four individuals who were originally named as Defendants in this case, Roy Fuller, Richard Hodges, Shawn Hooks and Michael Lane, have all been dismissed as party Defendants. At that same time, a new party Defendant, Randall Williams, was added as a party Defendant. See Court Docket Nos. 28, 35, 37. Another originally named Defendant, Investigator "Hembrick" (correct name "Hamer"), has never been served with process. See Court Docket No. 24. The remaining Defendants, including new Defendant Williams, have filed the motion referenced hereinabove.



1

respond adequately, the Defendants' motion may be granted, thereby ending his case.

Notwithstanding the specific warning and instructions as set forth in the Court's Roseboro order, Plaintiff failed to file any response to the Defendants' motion. Therefore, a Report and Recommendation for dismissal for lack of prosecution was entered on October 15, 2015. However, that Report and Recommendation provided Plaintiff with one last opportunity to file a response in opposition to the Defendants' motion, and Plaintiff did file a response in opposition on October 30, 2015. Therefore, that Report and Recommendation has been vacated.

Defendants' motion is now before the Court for disposition.[2]

### Allegations of Plaintiff's Complaint

Plaintiff has filed a rambling eighteen (18) page verified Complaint[3] in which he sets forth a narrative of various problems/complaints he has about the way he is being treated. Plaintiff alleges that in August 2011 he wrote a Request to Staff to Division Director Jimmy Sligh complaining that the Defendant Housey (a correctional officer) had violated SCDC Policy OP 21.12 (PREA).[4] Plaintiff alleges that Sligh forwarded this Request to Staff form to the Defendant Cohen, Warden at the Ridgeland Correctional Institution (RCI), who came and spoke to him about his complaint against Sgt. Housey. Plaintiff alleges that the (unserved) Defendant "Investigator

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[4]Prison Rape Elimination Act (PREA). PREA addresses problem of rape in prison, authorizes grant money, and creates a commission to study the issue. See Byrd v. SCDC, No. 11-3340, 2013 WL 53099759 at * 11 (D.S.C. Sept. 19, 2013; cf. Berry v. Eagleton, No. 13-2379, 2014 WL 4273314 at * 10 (D.S.C. Aug. 29, 2014) [PREA creates no private cause of action under § 1983].



Hembrick"[5] was assigned by the Division of Investigations to investigate Plaintiff's claim against Sgt. Housey. Plaintiff alleges Cohen talked to him about the investigation and about a disciplinary conviction Plaintiff had recently received as well as the fact that Plaintiff had been on twenty-four hour medical coverage. Plaintiff alleges Cohen asked him what institution he wanted to go to, and that Plaintiff told him he wanted to go the Kershaw Correctional Institution (KCI). Plaintiff alleges that Cohen then told him that after his transfer, his disciplinary charge would be "drop[ed] out of the system" and all of his privileges would be reinstated. Thereafter, Plaintiff was transferred to KCI in September 2011, following which his disciplinary charges were dropped and all of his privileges were reinstated. See Court Docket No. 1-1.

Plaintiff alleges that on June 5, 2012 he was transferred back to RCI for medical reasons, but that Plaintiff told (now dismissed Defendant) Hodges that he could not be housed at RCI because of the ongoing investigation. Even so, Plaintiff alleges that Cohen instructed his officers to take Plaintiff to the Beaufort Unit at RCI, even though (Plaintiff alleges) Housey was still the Sergeant of that Unit. Plaintiff alleges this was a violation of SCDC policy. Plaintiff alleges that as "soon as [he] got to the Beaufort Unit in my assigned cell B-68 I was brutally attacked by several inmates for the reporting of [Housey] and other compelling reasons". Plaintiff alleges that he was thereafter taken to medical and seen by the nurses, following which he was placed in isolation in the SMU[6] because he had a "pending phone charge from the previous institution". Plaintiff alleges that thereafter, on June 20, 2012, that charge was "dismissed for a procedural error", and he was released from the SMU to the Charleston Unit. However, Plaintiff alleges that on December 27, 2012, he was told by (now dismissed Defendant) Fuller that "per Warden Cohen" he was to be placed back

---

[5]The correct spelling of Hembrick's name is apparently "Hamer". See Answer, ¶ 10.

[6]Special Management Unit.



in the Beaufort Unit. Plaintiff alleges he saw Cohen and asked him why he was being moved back to the Beaufort Unit and asked to be put "somewhere safe", but that Cohen instructed that he be sent to the Beaufort Unit. Plaintiff alleges that when he arrived at the Beaufort Unit, he asked Lt. Housey[7] if he [Plaintiff] could call his attorney, but that he was never allowed "the attorney phone call".

Plaintiff alleges that on January 18, 2013 he spoke to Lt. Housey again "where I told him about the sexual assault that took place in this very office". However, Lt. Housey had "no knowledge of what I was telling him", following which Lt. Housey "immediately called Investigator Hembrick [Hamer] but he was unavailable at the time". Plaintiff alleges Lt. Housey then allowed Plaintiff to call his attorney. Plaintiff further alleges that that same day he contacted the FBI via institution phone and "made a report".

Plaintiff alleges that on January 22, 2013 he was told by Lt. Housey to pack all of his property and go to operations, where Warden Cohen was waiting. Plaintiff alleges that Cohen then told him to go to the "holding cell", where (approximately four hours later) Plaintiff was seen by PREA Coordinator and Operations Lieutenant Monique Capers along with Ridgeland Case Manager Sonja Alexander. Plaintiff alleges that these two individuals told him they had no knowledge of the PREA complaint that he had filed in 2011 with Sligh, but that they would "document it" in the PREA database and a separation order would be entered with respect to Plaintiff and Housey. Plaintiff alleges that he was then placed in the SMU to await a transfer, following which he filed another grievance on January 27, 2013.

Plaintiff alleges that in February 2013 Cohen placed him in security detention

---

[7]This is a different individual from the Defendant Housey, who is a Sergeant. See Cohen Affidavit, ¶ 16, Lt. Albert Housey Affidavit, ¶¶ 2-3.



because there was "no other level (2) institution 24 hr. medical available for [Plaintiff] to go to". Plaintiff alleges that, while in security detention, he received a threatening note in his food, which he showed to the security officers, and following which he went on a hunger strike.  On March 6, 2013, Plaintiff filed another grievance stating that he feared for his safety and well being.  Plaintiff complains, however, that the Defendant Montouth[8] (an Inmate Grievance Coordinator) sent his grievance back unprocessed.  Plaintiff alleges that on March 13, 2013 his attorney called Cohen about Plaintiff's safety and well being, which he followed up with a letter.  Plaintiff alleges that thereafter on March 18, 2013, Cohen had Plaintiff transferred to the Allendale Correctional Institution (ACI), where he remained in the SMU.  Plaintiff alleges that on March 26, 2013 he "filed a appeal" on Cohen for being placed in the SMU, to which he received a response from the Defendant Patterson on May 1, 2013.[9]  See Court Docket No. 1-1.

Plaintiff alleges that the Defendants were deliberately indifferent to his safety and well being while housed at RCI, that the Defendants violated SCDC policy and procedures which require victims of sexual abuse to be kept separate from their perpetrators, that he was wrongfully placed in the SMU for requesting an investigation, that the Defendants covered up the investigation and Plaintiff's allegations of sexual abuse and failed to properly handle this investigation, that the Defendants were also deliberately indifferent to his safety and well being in March 2013 when he received a threatening note with his lunch tray, that he was also subjected to being strip searched and "naked of clothing and food for three days . . . .", that the Defendants failed to properly handle and process his grievances, and that the Defendants' actions have subjected him to cruel and unusual

---

[8]Correct spelling.  See Montouth Affidavit.

[9]Plaintiff is currently housed at the Broad River Correctional Institution (BCI).  See Court Docket No. 47.

5



punishment. Plaintiff seeks monetary damages, as well as that each Defendant be investigated by the FBI or the South Carolina Law Enforcement Division (SLED).

Plaintiff has attached copies of two grievances as exhibits to his Complaint. The first is a grievance dated March 26, 2013 (ACI-0313-13). Plaintiff's Step 1 Grievance form[10] alleges that he is appealing his placement in security detention on January 22, 2013 and asks that he be taken off security detention and placed in the general population. Plaintiff has also submitted a copy of his Step 2 Grievance Appeal of this grievance, which reads:

> Your concern has been reviewed. In order to ensure the safety and well being of the Public, Agency, institution, employees and inmates, including yourself, it was determined that you needed to be housed in a more secure location. You have filed grievances and wrote staff that you fear for your life and we must take the necessary action to ensure that you are protected. Since you entered SCDC you have been housed at 12 institutions and you have 7 institutions with separation (2 that you have not been housed at). Due to security concerns you will not be released to general population at this time.
>
> Therefore , your grievance is denied.

Plaintiff acknowledge receipt of the response to his grievance on May 1, 2013.

The second grievance Plaintiff has submitted (RCI-0083-13) is a Step 1 Grievance form dated January 27, 2013, in which Plaintiff is apparently complaining about corrections officials not reporting knowledge they had of sexual misconduct. This grievance apparently relates to Plaintiff's claim that he was sexually assaulted in 2011. Plaintiff asks that he be transferred immediately and that SLED conduct an investigation. In the "Action Taken" section of this

---

[10]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006); see also Montouth Affidavit, ¶ ¶ 6-9.



grievance, Plaintiff is advised that his grievance had been forwarded to the Division of Investigations for possible review and to RCI's PREA Coordinator. Subsequently, on February 15, 2013, the Warden issued his decision, which reads, in part:

> All procedures were followed appropriately. After the review of your grievance at the Department of Investigation, it was determined that this grievance is under investigation. You will be notified of the outcome of the investigation. In accordance with SCDC's policies and procedures, employee disciplinary action, if taken, is confidential and will not be disseminated. Based on this information, I consider this matter resolved.

On February 28, 2013, Plaintiff indicated that he accepted the Warden's decision and considered the matter closed. <u>See generally</u>, <u>Plaintiff's Verified Complaint</u>, with attached Exhibits.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro</u> <u>se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented

7



pursuant to these standards, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

The initial question to be determined is what claims may Plaintiff even properly bring before this Court, as pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison, and Defendants argue in their motion for summary judgment, inter alia, that this case is subject to dismissal because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 549 U.S. 199 (2007). To meet this burden, the Defendants have submitted a copy of the SCDC Grievance Procedure outlining what steps an inmate must take to exhaust their administrative remedies; an affidavit from Jane Simmons,

8



Inmate Grievance Administrator with the SCDC, who has attached copies of all relevant and potentially relevant grievances (totaling twelve grievances) Plaintiff filed and the status/resolution(s) thereof, and attesting that Plaintiff failed to exhaust his administrative remedies with respect to these grievances; and an affidavit from the Defendant Montouth (Inmate Grievance Coordinator at RCI), and who has attached copies of fifteen grievances Plaintiff filed (the twelve noted by Simmons in her affidavit as well as three additional grievances), and attesting that Plaintiff failed to exhaust his administrative remedies with respect to any of these grievances.  See Simmons and Montouth Affidavits, with attached Exhibits.  For his part, Plaintiff only references two of these grievances in his verified Complaint: RCI-0083-13 and ACI-0313-13, which are also the grievance copies attached to his Complaint.  Plaintiff lists the date that he received his "final" determination on his grievance as being May 1, 2013, which is the date he received the decision on his Step 2 Grievance Appeal in Grievance No. ACI-0313-13.  See Complaint, Section II, and attached exhibits [Grievance forms].

        This evidence, including Plaintiff's own exhibits and evidence, clearly shows that Plaintiff failed to exhaust his administrative remedies with respect to any potential claims he may be asserting in this lawsuit other than (as is discussed hereinbelow, infra) the claim Plaintiff asserts with respect to Grievance No. ACI-0313-13.  While Plaintiff discusses, in his affidavit filed in opposition to the Defendants' motion, how many of his grievances were returned unprocessed and/or that he had filed various grievances, he has provided no evidence (or even argument) to show that he ever pursued any of these other grievances past the Step 1 level.  Therefore, Plaintiff failed to exhaust his administrative remedies with respect to any of these other potential claims.  See generally, Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006)[Remedies not exhausted where inmate did not appeal denial]; cf. Sullivan v. Coleman, No.



06-1588, 2006 WL 3759757, * 6 (D.S.C. Dec. 18, 2006)[Finding that inmate abandoned grievance where he failed to properly complete and return Step 2 Inmate Grievance Form]; Nally v. King, No. 12-128, 2013 WL 594709, at * 3 (N.D.W.Va. Jan. 3, 2013) ["Failure to receive a response is not an excuse for not moving to the next level of the grievance procedure"]; adopted by 2013 WL 593448 (N.D.W.Va. Feb. 15, 2013); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) ["Nevertheless, even if Plaintiff did file a Step 1 grievance that was returned unprocessed, there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."];  see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003) [Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge Defendants' evidence that he did not properly pursue his administrative remedies]; cf. Poe v. Bryant, No. 12-3142, 2013 WL 6158023, at * 2 (D.S.C. Nov. 21, 2013)[Holding that defendants satisfied their burden of showing a failure to exhaust administrative remedies with exhibits detailing the grievance process and showing that Plaintiff failed to exhaust this remedy, and that Plaintiff's contradictory statements in response, including that the Defendant would not provide him a grievance, were not sufficient to avoid summary judgment in light of the contrary evidence].

However, with respect to Grievance ACI-0313-13, the undersigned does not find that the Defendants have satisfied their burden of showing that Plaintiff failed to exhaust his administrative remedies with respect to the claim set forth in that grievance.  Defendants argue, and Simmons and Montouth state in their affidavits, that this grievance was not fully exhausted (although Defendants acknowledge that Plaintiff completed his grievance appeal through the Step 2 level) because Plaintiff did not appeal the denial of his Step 2 grievance to the Administrative Law



Court. However, Plaintiff was not required to appeal the denial of his Step 2 grievance to the Administrative Law Court in order to exhaust his administrative remedies for purposes of the claim he was asserting in this grievance, as conditions of confinement claims do not require exhaustion past the Step 2 institutional level. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Brown v. Doe, No. 12-927, 2015 WL 1297917 at * * 1, 6-8 (D.S.C. Mar. 23, 2015) [holding that 42 U.S.C. § 1997e(a) does not require further appeal to Administrative Law Court]; Gunnells v. Goodman, No. 14-1978, 2015 WL 4257199 at **1, 6-7 (D.S.C. July 14, 2015)[same]; Ford v. Ozmint, No. 13-1618, 2014 WL 2881621 at * 2 (D.S.C. June 25, 2014); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007); Lowry v. Davis, No. 06-509, 2006 WL 3759828 at * 2 (D.S.C. Dec. 18, 2006)["It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."].[11]

Therefore, Defendants' argument that Plaintiff failed to exhaust his administrative remedies with respect to the claims set forth in Grievance No. ACI-0313-13 is without merit, as it is readily apparent that Plaintiff exhausted this grievance through a decision on his Step 2 appeal prior to filing this lawsuit. See Complaint, with attached Exhibits [Step 1 and Step 2 Grievance Forms for Grievance No. ACI-0313-13]; See also Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) [recognizing that completion of Step 2 grievance exhausts

---

[11]If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process *and* also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973). Plaintiff is not challenging a disciplinary conviction in his grievance ACI-0313-13.



administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.].

## II.

Plaintiff's exhausted claim relates to his placement in security detention on January 22, 2013. Plaintiff alleges in his verified Complaint that prior to that date he was being held in the Beaufort Unit, which Plaintiff alleges was unsafe for him. Plaintiff alleges that he spoke to Lt. Housey on January 18, 2013 about a sexual assault which had taken place "in this very office",[12] following which Lt. Housey called the individual (Hamer) who was supposed to be investigating that event (but who Plaintiff alleges was unavailable at the time), and also allowed Plaintiff to call his attorney. Plaintiff further alleges that that same day he contacted the FBI about his situation, all of which (according to the allegations of Plaintiff's Complaint) led to him being moved to the SMU at RCI to await transfer to security detention on January 22, 2013. Plaintiff complains in his Complaint, as well as in his grievance, that he was told he had to be in security detention because there was no other Level 2 Institution that had 24 hour medical services available for him. Plaintiff's grievance indicates that Cohen told Plaintiff that he [Plaintiff] had to get the 24 hour medical requirement removed before Plaintiff could be transferred, because Plaintiff had "separation" orders in place for the only other two institutions that had 24 hour medical coverage. After Plaintiff's medical requirement was lifted, Plaintiff was transferred on March 13, 2013 to ACI, but was still in security detention (SMU), although Plaintiff complains in his grievance that he should have no longer been in security detention because the reason he was in security/protective status was because he was at RCI, and that once he was no longer at RCI "the concerns is no longer

---

[12]Apparently the sexual assault Plaintiff alleges he was subjected to in 2011, committed by the Defendant Sgt. Housey.



an issue". See Defendants' Exhibit B(a), p. 3.

With respect to this claim, the Defendants have submitted an affidavit from Tonja Alexander, a case manager and one of the individuals Plaintiff alleges he met with on January 22, 2013, who attests that when she and PREA Coordinator Monique Capers met with the Plaintiff on that date and Plaintiff made his Complaint against Sgt. Housey, Plaintiff's claim was entered into the PREA database and a separation order was entered between Plaintiff and Sgt. Housey. Alexander attests that both of these steps were taken in compliance with established policy and procedure. The PREA report was then sent to the PREA Coordinator in Columbia for investigation, while a separate request was made to transfer Plaintiff to another institution, so that Plaintiff could be separated from Sgt. Housey (who was at RCI) as soon as a Level 2 facility with 24 hour nursing care was available. Alexander attests that Plaintiff's nursing care restriction, along with Plaintiff's numerous "separations" from other inmates and certain staff, made moving the Plaintiff very difficult, and that Plaintiff asked medical to re-evaluate him to see if the 24 hour nursing care restriction could be removed from his record, which would have made his transfer easier. Alexander attests that a review of Plaintiff's file indicates that he routinely asked for that medical restriction to be added or removed as it suited him and his desires for transfer locations. However, Alexander attests that, from a classification assignment perspective, until the restriction was removed by medical staff, Plaintiff's desires were of no import.

Alexander attests that after Plaintiff made his complaint about Sgt. Housey through the grievance process in January 2013, he was placed on security detention for security concerns until the investigation was finished or until an available transfer location became available. Alexander attests that security detention is not punishment, it is to protect the inmate and separate him from the alleged perpetrator pending investigation. Alexander attests that Plaintiff was



thereafter transferred to ACI on March 18, 2013 to affect the separation. Although ACI does not have 24 hour medical, this became an option when SCDC doctors approved the removal of Plaintiff's 24 hour medical availability as a restriction. <u>See</u> <u>generally</u>, <u>Alexander Affidavit</u>, with attached Exhibits.

   Monique Capers, who during the relevant time period was the PREA Compliance Manager, has also submitted an affidavit in which she attests that she received notification on January 24, 2013 that Plaintiff had made a complaint of a sexual nature. Capers attests that she and Alexander interviewed Plaintiff that date concerning his allegations, following which she forwarded the necessary information to then Investigator Hamer. Capers further attests that, following this meeting, Alexander put the necessary separation information into the system which effects a transfer request for the inmate from the institution and a separation requirement between the inmate and the officer for both individuals protection pending investigation.

   Capers attests that at that time Plaintiff was on a 24 hour nursing restriction, which limited his transfer potential to institutions with 24 hour nursing care. Capers further attests that multiple institutions were not viable placements for the Plaintiff because of the number of holds and separations between the Plaintiff and other inmates and staff that were currently in effect. Therefore, in order to keep the Plaintiff and the officer Plaintiff had made his complaint against separated, Plaintiff was kept on security detention pending an appropriate placement availability. Capers attests that during this time Plaintiff requested that his medical restriction be lifted, and that she thereafter received a notice that Plaintiff was going to be transferred because his medical class had been updated and he would no longer require 24 hour medical availability. Plaintiff was then transferred to ACI. <u>See</u> <u>generally</u>, <u>Capers Affidavit</u>, with attached Exhibits.

   The Defendant Levern Cohen, Warden at RCI, has submitted an affidavit wherein



he attests that Plaintiff is a problematic inmate with several issues that complicate his being transferred from institution to institution.  Cohen attests that, in his years of incarceration, Plaintiff has transferred institutions no less than 41 times, equaling roughly four transfers every year.  Cohen attests that Plaintiff is a violent offender and as such this classification limits the institutions where he can be placed.  Further, for most of his time in the SCDC, Plaintiff has requested to be kept at a facility with 24 hour a day nursing care due to an asthmatic condition, although when he seeks transfer elsewhere he routinely asks medical to remove that restriction.  Cohen attests that Plaintiff routinely files grievances when medical personnel do not agree to add or remove him from the medical placement restriction at his request.  Cohen further attests that Plaintiff's transfer from institution to institution is problematic due to his high number of separations, and that when added to his custody level as well as his medical restrictions, transferring the Plaintiff is very difficult.

Cohen attests that after Plaintiff complained to Lt. Housey on January 22, 2013 about alleged sexual misconduct by the Defendant Sergeant Housey (no relation), he was interviewed by Capers and Alexander and then removed from the Beaufort Unit and placed in security detention pending transfer to another institution.  Cohen attests that this was in compliance with policy and PREA mandates, and that Plaintiff was placed on security detention because at that time there was no other Level 2 institution with 24 hour medical care available for Plaintiff to go to.  Cohen attests that after doctors removed Plaintiff's medical restriction in March 2013, he was transferred to ACI.  Cohen attests that while Plaintiff alleges in his grievance of March 26, 2013 that his placement on security detention was in violation of SCDC policy, that there was no violation of any SCDC policy.  See generally, Cohen Affidavit, with attached Exhibits.

Lt. Albert Housey has submitted an affidavit wherein he attests that in December 2012 Plaintiff told him about an alleged sexual act involving the Defendant Housey, a Sergeant.  Lt.



Housey attests that he followed up by calling Investigator Hamer, and that when he was eventually able to get Hamer he was told of Plaintiff's allegation which concerned an event that happened in 2011 but that had not been reported. Hamer told Lt. Housey that Plaintiff appeared to want to transfer and that the details of his claim "have not borne out". Lt. Housey attests that there was nothing in his conversation with Hamer that led him to be concerned, nor has he ever had any reason to suspect that the allegation Plaintiff made in 2013 about Sergeant Housey had ever happened and that he [Lt. Housey] had found the Defendant Housey to be a good officer.

Lt. Housey attests that after Plaintiff filed a grievance on January 22, 2013 that alleged inappropriate sexual conduct contact with staff, a PREA review was initiated, and that upon receiving orders from the Warden's Office, he [Lt. Housey] instructed Plaintiff to pack up his property and go to operations. After meeting with the PREA Coordinator, Plaintiff was transferred out of the Beaufort Unit and placed in security detention pending transfer to another institution. See generally, Lt. Albert Housey Affidavit, with attached Exhibits.

As attachments to his memorandum in opposition to summary judgment, Plaintiff has submitted a copy of a Request to Staff Member form dated January 21, 2013, addressed to the Defendant Cohen, wherein Plaintiff complains about having been placed in the Beaufort Unit because he cannot "get comfortable in this dorm" and because "they stay locked-down too much for one". Plaintiff also states in this Request to Staff Member form that the Defendant Sergeant Housey "doesn't want me down here anyway". Plaintiff asked to be moved to another dorm, and to also have some of his property replaced. See Plaintiff's Exhibit S. Plaintiff has also submitted a copy of his transfer history, which shows that on occasion Plaintiff has been transferred from a Level 2 to a Level 3 institution (including his current place of incarceration at BCI). See Plaintiff's Exhibit T. Therefore, Plaintiff "objects" to Cohen's statement that there was no other "Level 2" institution



that Plaintiff could have been sent to when he was kept in "isolation" in 2013.

        In an affidavit attached to his response in opposition, Plaintiff attests that he wrote the Division of Operations on February 14, 2013 expressing concerns about his safety at RCI, and also filed a grievance on February 11, 2013 about his PREA case. Attached Exhibit T to Plaintiff's affidavit is a Request to Staff Member form dated February 14, 2013[13] to the Director of Operations, wherein Plaintiff states that he fears for his safety and well being while house at RCI, and that while he was currently on security detention "protective concerns" status, he was still concerned about being at RCI and wanted to know why he could not be transferred to BCI, unless he was maybe just being punished for what he reported. The response section of this Request to Staff Member form reflects that, on May 9, 2013, Plaintiff received a response which stated: "On 03/18/13, you were transferred to Allendale Correctional Institution, away from Ridgeland Correctional Institution". See Attached Exhibit to Plaintiff's Affidavit. Plaintiff has also attached as Exhibit W to his affidavit a copy of a letter from his attorney dated March 13, 2013 addressed to the Defendant Cohen, stating that Plaintiff is in fear of his life and safety while at RCI, and that Plaintiff had also reported to him [counsel] that Plaintiff was being "punished" by being placed in isolation.

        Liberally construed, Plaintiff's Complaint (with respect to his exhausted claim) concerns his placement in security status pending his transfer to ACI. Although Plaintiff apparently (in his grievance) also complained about still being in the SMU at ACI, he does not assert this as a separate claim in his Complaint, nor do either Plaintiff or the Defendants discuss that issue. In any event, Plaintiff has failed to submit evidence to support a viable claim regarding his custody or classification status.

        First, it is readily apparent that in January 2013 Plaintiff was himself demanding that

---

[13]This is a different Exhibit T than was just referenced, supra.



he be placed in some kind of security status or "separation", as he did not feel safe in the Beaufort

Unit. The Defendants[14] certainly cannot be faulted for having moved Plaintiff out of the Beaufort

Unit into a security detention status pending his transfer based on these facts; indeed, they would

have been opening themselves up to potential liability for a failure to protect claim if they had not.

Cf. Jensen v. Conrad, 747 F.2d 185, 193 (4th Cir. 1984) [Discussing duty to protect prisoners from

risk of harm]. Further, while Plaintiff complains about the amount of time he was in security

detention at RCI before being transferred, the evidence reflects that Plaintiff was transferred to ACI

as soon as the necessary approvals were obtained to do so, while Plaintiff has presented no evidence

to show that his medical and "separation" status were not an impediment to a more rapid transfer

for him. Rather, Plaintiff only speculates that BCI was a possibility for transfer, while providing

no evidence to show that an immediate transfer to BCI was an option. Plaintiff has presented no

evidence to show what the housing situation at BCI was at that time, whether he would have had any

separation issues with inmates or staff at that institution, or whether his medical needs could have

been met at that institution. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)

[Plaintiff's conclusory allegations insufficient to maintain claim]. Nor is there in any event any

requirement or obligation on the part of prison officials to transfer Plaintiff to a facility he wants.

Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional

right to be housed at a particular institution . . ."]; cf. Norfleet v. Godinez, No. 15-160, 2015 WL

---

[14]Only the Defendant Cohen would appear to have any connection with the decision at issue. Therefore, the remaining served Defendants would all be entitled to dismissal as party Defendants even if this claim were to survive summary judgment. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); see also Horton v. Marovich, 925 F.Supp. 540 (N.D.Il. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].



3613592 at * 5 (S.D.Ill. June 9, 2015) ["A prisoner has no right to be transferred the prison of his choice, so a complaint over a delayed transfer would likely not be actionable in and of itself."].

        Plaintiff's claim could possibly survive summary judgment if Plaintiff had presented some evidence that the *reason* he was placed in SD was because the deciding officials placed him there for improper reasons, such as retaliation for engaging in otherwise lawful conduct (such as filing lawsuits), racial discrimination, or some other arbitrary and capricious reason. Norfleet, 2015 WL 3613592, at * 5 ["[I]f an act is taken in retaliation for the exercise of a constitutionally protected right, then it will support a § 1983 claim"]; see generally, Chevron U.S.A. v. Natural Res. Def. Cil., Inc., 467 U.S. 837, 844 (1984) [Agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute]; Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]. However, Plaintiff has presented no such evidence. He simply complains about having been placed in security detention at RCI, and speculates (without any supporting evidence) that the delay in transferring him out of RCI was because he was being "punished" for his complaints against Sgt. Housey. However, as previously noted, Plaintiff was initially placed in security detention at his own behest, and he has presented no evidence sufficient to give rise to a genuine issue of fact that any delay in his transfer to ACI was the result of any "retaliation" or was an arbitrary or capricious decision by prison officials. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; see In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be



accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; Sandin, 515 U.S. at 483-485 [rejecting inmate's claim that placement in disciplinary segregation violated his due process or liberty interests under either the Constitution or state statutes]; Chevron U.S.A., 467 U.S. at 844 [Agency's decisions are not to be second-guessed by federal courts unless they are shown to be arbitrary, capricious, or manifestly contrary to the statute].

　　　　　With respect to Plaintiff's classification and placement upon being transferred to ACI, even assuming for purposes of summary judgment that Plaintiff had included this issue as a claim in his Complaint, Plaintiff is now housed at BCI, and is therefore no longer even at ACI. Nor is there any evidence to show that anyone Plaintiff has named as a Defendant in this case had anything to do with Plaintiff's classification decisions at ACI.  See Barren, 152 F.3d at 1194 ["Liability . . . must be based on the personal involvement of the defendant"].  Further, even if Plaintiff had both asserted this issue as a claim in his Complaint and named a proper party Defendant, he has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification.  See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Sandin v. Connor, 515 U.S. 472, 486 (1995) [holding that disciplinary segregation did not present the type of atypical,



significant deprivation in which a state might create a liberty interest]; Neal v. Shimoda, 131 F.3d at 828 ["[A] prisoner does not have a constitutional right . . . to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

Plaintiff has presented no evidence to dispute his custody or disciplinary status - his own exhibits reflect that he has had disciplinary problems and convictions - and his placement in the SMU at ACI does not by itself give rise to a constitutional claim.  Sandin, 515 U.S. at 483-485 [rejecting inmate's claim that placement in disciplinary segregation violated his due process or liberty interests under either the Constitution or state statutes]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest].  It is well settled that the placement of inmates into administrative segregation units or similar units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or jail staff, etc."  Jackson v. Bostick, 760 F. Supp. 524,528 (D. Md. 1991); Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995) [prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"].  Therefore, administrative segregation is not per se cruel and unusual punishment under the Eighth Amendment.  See Allgood v. Morris, 724 F.2d 1098, 110 1 (4th Cir. 1984) [segregated protective custody]; Ross v. Reed, 719 F.2d 689, 697 (4th Cir. 1983) [administrative segregation].  See also Joseph v. Gillespie, 73 F.3d 357 (4th Cir. 1995) ["Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."];



Reffritt v. Nixon, 917 F.Supp. 409, 412 (E.D.Va.l996) [plaintiff has no protected interest in remaining in or being released into general population]; Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) ["Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a violation of due process." (citing Meachum v. Fano, 427 U.S. 215 (1976))]. While the Fourth Circuit has recently held that a prisoner may set forth a valid due process claim relating to SMU custody under some circumstances, the Plaintiff here has failed to set forth the necessary facts to proceed on such a claim in this case.  Cf. Incumaa v. Stirling, ___ F.3d ___, 2015 WL 4081648 (4th Cir. July 7, 2015). Plaintiff does not discuss in his Complaint how long he was in SMU while at ACI, what conditions he was subjected to while in the SMU at ACI, or what privileges or differences existed in his confinement in SMU at ACI verses the general population at ACI.  Id., at * 11.  In fact, as previously discussed, Plaintiff has not set forth a claim in his Complaint relating to his confinement in the SMU at ACI at all.  See Complaint (Court Docket No. 1).

Finally, under these facts, even assuming for purposes of summary judgment that Plaintiff is correct that prison officials failed to follow prison procedures in determining Plaintiff's placement (of which there is no evidence), that would not in and of itself be a compensable claim in this § 1983 action.  Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."]



(citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 9, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

